# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **CRIMINAL ACTION NO.** |
| v. | ) | **05-cr-00615** |
| | ) | |
| **KEVIN RANKIN** | ) | **CIVIL ACTION NO.** |
| | ) | **09-cv-3428** |

---

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **CRIMINAL ACTION NO.** |
| v. | ) | **07-cr-00020-2** |
| | ) | |
| **KEVIN RANKIN** | ) | **CIVIL ACTION NO.** |
| | ) | **09-cv-3428** |

---

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                 **June 14, 2011**

Pending before the Court are Kevin J. Rankin's ("Petitioner" or "Defendant") Habeas Corpus Motions to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255[1] and the Government's Motion to Dismiss the same.[2]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2005, a federal grand jury in the Eastern District of Pennsylvania returned an indictment charging Petitioner with two counts of possession of a firearm by a convicted

---

[1]    Petitioner filed identical Habeas Petitions in both above-captioned criminal matters.  See Criminal Action No. 05-cr-615, Doc. No. 119; Criminal Action No. 07-cr-20-2, Doc. No. 153.  Additionally, Criminal Actions 05-cr-615 and 07-cr-20-2 were consolidated for purposes of Petitioner's guilty plea and sentencing.  See 05-cr-615, Doc. No. 74; 07-cr-20-2, Doc. No. 93; see also Tr. of Trial/Change of Plea Hr'g ("Tr.") 3.

[2]    Criminal Action No. 05-cr-615, Doc. No. 125.

felon, in violation of 18 U.S.C. § 922(g) ("firearm possession case").[3]  While the firearm possession case was pending, Petitioner was also indicted on January 16, 2007 by a separate federal grand jury in the Eastern District of Pennsylvania for one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371; three counts of making false statements to a federally insured financial institution in violation of 18 U.S.C. § 1014; one count of willful failure to file a tax return in violation of 26 U.S.C. § 7203; one count of willfulfailure to file tax returns in violation of 26 U.S.C. § 7203; and four counts of making or subscribing a false tax return in violation of 18 U.S.C. § 7206(1) ("fraud case").[4]  Petitioner faced a total statutory maximum of 128 years imprisonment, a 5-year period of supervised release, a $2.6 million fine, a $1,025 special assessment, and restitution to the IRS of at least $247,000.[5]  Petitioner's motion to sever trials on Counts One and Two in the firearm possession case was granted on July 23,

<hr>

[3]     05-cr-615, Doc. No. 10.

[4]     07-cr-20-2, Doc. No. 1.

[5]     Specifically, Petitioner faced the following statutory maximum sentences: on Count 1 and 2 of Criminal Action No. 05-615-1, possession of a firearm by a convicted felon, 10 years imprisonment on each count, a 3-year period of supervised release, a $250,000 fine on each count, and a $100 special assessment on each count; on Count 1 of Criminal Action No. 07-20-2, conspiracy to make false statements to federally insured financial institutions, to commit wire fraud, and to defraud the United States, 5 years imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment; on Counts 2, 3, and 5 of Criminal Action No. 07-20-2, making false statements to federally insured financial institutions, 30 years imprisonment on each count, a 5-year period of supervised release, a $250,000 fine on each count, and a $100 special assessment on each count; on Count 21 of Criminal Action No. 07-20-2, willfully failing to file a tax return, 1 year imprisonment, a 1-year period of supervised release, a $100,000 fine, and a $25 special assessment; on Count 22, 23, 24, and 25, filing false tax returns, 3 years imprisonment on each count, a 3-year period of supervised release, a $250,000 fine on each count, a $100 special assessment on each count, and counts of prosecutions.  See Guilty Plea Agreement ¶ 8.

2007.[6]  On July 25, 2007, a jury returned a guilty verdict on Count Two in the firearm possession case.  As a jury waited in a separate courtroom to commence his trial on Count One, Petitioner chose to enter a change of plea for the remaining firearm (Count One) and for the fraud and tax-related charges pending against him, and entered into a written plea agreement with the Government.[7]  At the time, Petitioner was represented by experienced criminal defense attorneys of his choice—Edwin Jacobs, Jr., Christopher Warren, and Robert Madden.

Under the terms of the plea agreement, Petitioner agreed "not to challenge the guilty verdict returned by the jury on July 25, 2007 in Criminal [Action] No. 05-615-1 . . . ."[8]  In the agreement, Petitioner further agreed that, with very limited exceptions, he would neither appeal nor present any collateral challenge to his conviction or sentence.  Specifically, the appellate waiver provision of the plea agreement stated that:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.[9]

The only exceptions to this waiver were if the government filed an appeal, or if certain conditions were present such as:

> (1) defendant's sentence on any count of conviction exceeds the statutory maximum for that count . . . ; (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; (3) the sentencing judge,

---

[6]    05-cr-615, Doc. Nos. 32, 50.

[7]    Guilty Plea Agreement [05-615, Doc. No. 125-1] ¶¶ 1, 3.

[8]    Guilty Plea Agreement ¶ 2.

[9]    Guilty Plea Agreement ¶ 13.

exercising the Court's discretion pursuant to <u>United States v. Booker</u>, 125 S.
Ct. 738 (2005), imposed an unreasonable sentence above the final Sentencing
Guideline range determined by the Court.[10]

In exchange for these waivers, the Government agreed that it would recommend to the Court that

Petitioner receive a three-level downward adjustment pursuant to U.S.S.G. § 3E1.1(a) and (b) for

Petitioner's timely acceptance of responsibility of his crimes and for assisting authorities in the

investigation or prosecution of his own misconduct by timely notifying the Government of his

intent to plead guilty and timely providing complete information about his own involvement in

the offenses.[11]   The plea agreement, as signed by Petitioner, also made it clear that it contained

"no additional promises, agreements or understandings other than those set forth in this written

guilty plea agreement, and that no additional promises, agreements or understandings [would] be

entered into unless in writing and signed by the parties."[12]   Additionally, the plea agreement

stated that Petitioner was "satisfied with the legal representation provided by [his] lawyer; the

defendant and [his] lawyer . . . fully discussed this plea agreement; and the defendant [was]

agreeing to plead guilty because the defendant admits that he is guilty."[13]   Petitioner signed a

separate two-page Acknowledgment of Rights, the first paragraph of which stated his

understanding that he has the right to "not have to plead guilty," and that "if [he] plead[s] guilty,

[he will] have waived [his] right to appeal, except as set forth in the appellate waiver provisions

---

[10]     Guilty Plea Agreement ¶ 13(b).

[11]     Guilty Plea Agreement  ¶ 10.

[12]     Guilty Plea Agreement  ¶ 15.

[13]     Guilty Plea Agreement  ¶ 14.

4

of [his] plea agreement."[14]

At Petitioner's July 26, 2007 Change of Plea hearing, at which Petitioner was represented by his three attorneys,[15] the Court conducted a full colloquy with Petitioner. During the colloquy, the Court reviewed with Petitioner, in great detail, the plea agreement to determine whether Petitioner was competent and capable of entering an informed plea, and to determine whether he knowingly, intelligently, and voluntarily gave up his rights to a trial by pleading guilty and entering into the underlying guilty plea agreement. The Court also explored whether the Petitioner understood the charges against him and the terms of the plea agreement.[16]

The Court first extensively explored Petitioner's competence, asking whether he had ever taken any drugs, prescribed or otherwise, had ever received in-patient or out-patient treatment for chemical addiction, either drugs or alcohol, whether such treatment had ever been recommended to him or whether it was a component of Petitioner's prior probation, when the petitioner had last consumed alcohol and whether he had taken any drugs, prescribed or over-the-counter, in the last 24 hours.[17] Petitioner responded that he had never undergone treatment for drug or alcohol abuse, had taken only prescription drugs and only those for treatment of his heart condition, and, within the last 24 hours, had ingested prescription medications for that heart condition, aspirin and two glasses of wine but had stopped drinking at 6:00 p.m. the prior evening.[18] The Court

---

[14]     Acknowledgment of Rights, [05-615, Doc. No. 125-1] ¶¶ 1, 6.

[15]     Tr. 5:5–11.

[16]     Tr. 5–7; 11–15; 29–30; 33–42; 48; 54–56.

[17]     Tr. 11:19–15:17.

[18]     Tr. 11:23–15:13.

further explored whether his prescription heart medications might affect his ability to understand the proceeding and the plea agreement:

| | |
|---|---|
| The Court: | So when you take this medication that you just listed for me, there's four prescription meds plus aspirin. You said you have had your medications in the last twenty-four hours, did you? |
| The Defendant: | Yes, Your Honor, I took it last night. |
| The Court: | When you take this medicine, does it affect your ability to understand what you are doing, or [affect] your comprehension in any way? |
| The Defendant: | I don't think so.[19] |

In addition, the Court also asked Petitioner whether his hearing impairment affected his ability to understand or hear the proceedings:

| | |
|---|---|
| The Court: | Now, I know also, because I heard you testify in the trial - - was it Tuesday you testified that you wear hearing aids? |
| The Defendant: | I do, Your Honor. |
| The Court: | So can you hear me now? |
| The Defendant: | I can, Your Honor. |
| The Court: | Do you have any trouble understanding or hearing what I am asking of you? |
| The Defendant: | I do not.[20] |

Petitioner also confirmed that he had been represented by his counsel of choice for a few years,

---

[19]    Tr. 15:8–18.

[20]    Tr. 6:24–7:7.

had discussed the indictment and cases with them, and was satisfied with their representation.[21]

The Court further explored with Petitioner his understanding of the appellate waiver provisions of the plea agreement. The Court first asked the Government to orally explain the terms of the plea agreement, including the provisions of the appeal waiver, on the Record:

> Mr. Schwartz: We also have an appellate waiver. The parties agree — the defendant agrees that he will not appeal either his conviction in the trial or any other matters, including post sentencing appeals through a 2255, with a very limited carve out.
>
> The defendant could appeal his sentence if the government was to appeal this Courts [sic] sentence. The defendant could also appeal his sentence if the government does not appeal, but if this Court was to sentence the defendant in excess of the statutory maximum of any of the particular counts, or if this Court was to erroneously depart upwards pursuant to the guidelines, or if this Court was to[,] exercising [its] discretion pursuant to Booker, impose an unreasonable sentence that is above the final guideline range determined by the Court.
>
> If any of those conditions were to apply, the defendant would be able to appeal. Otherwise he waives his right to appeal any other matter.[22]

After reviewing the essential terms of the plea agreement with Petitioner's counsel and counsel for the Government, the Court then entered into a colloquy with the Petitioner. Petitioner confirmed that he had reviewed, signed, and discussed the plea agreement with his

---

[21] Tr. 17–18.

[22] Tr. 24:18–25:11.

Additionally, Petitioner's counsel confirmed that: "The only circumstances under which we can appeal have been outlined by [counsel for the Government], and they pertain primarily to the sentence being imposed in violation of Booker and unreasonable sentence." Tr. 26:2–5. Counsel for the government confirmed that the plea agreement included an "absolute waiver of all appellate rights. . . . other than those narrow exceptions that I articulated," and that the appeals waived included both "direct appeal, a 2255 after sentence, or any other type of relief." Tr. 27:13–19.

counsel:

> The Court: . . . . Are these essentially the terms of your plea agreement as you understand them to be?
>
> The Defendant: Yes, Your Honor.
>
> The Court: And did you review your plea agreement? The written plea agreement, did you read it?
>
> The Defendant: I did, Your Honor.
>
> The Court: Did you review that plea agreement with your attorneys?
>
> The Defendant: I did.
>
> The Court: All of them on each case?
>
> The Defendant: Yes.
>
> The Court: All right. And did you sign the plea agreement?
>
> The Defendant: I did, Your Honor, I did.[23]

The Court also assured itself that Petitioner's plea was not the result of promises, assurances or terms associated with the agreement but not contained within the agreement or of any other improper factors:

> The Court: . . . . And this plea agreement that was signed has attached to it a two page acknowledgment of rights form. Now, let me ask you this. Other than the promises contained in this plea agreement that we just reviewed together, is there any other promise made to you that's not disclosed in this record, that could have or did induce you to plead guilty?
>
> The Defendant: No, Your Honor.
>
> . . . .

---

[23]     Tr. 29:11–25.

| | |
|---|---|
| The Court: | . . . Let me ask you, Mr. Rankin, did anyone make any threats to you in order to force you or induce you to plead guilty? |
| The Defendant: | No, Your Honor. |
| The Court: | So, in your mind, Mr. Rankin, are there any other terms of an agreement that [were] considered by you in any way, whether they were represented by the government, by one or more of your attorneys, by a sidekick, an[] employee, a relative, any information that convinced you you should plead guilty whether it's under duress, threat, intimidation, force, or assurances or promises? Other than what I know in writing? |
| The Defendant: | No, Your Honor.[24] |

Additionally, the Court assured itself that Defendant understood specifically the issues the Plea Agreement precluded him from challenging:

| | |
|---|---|
| The Court: | Do you understand that by pleading guilty you are giving up your right to challenge the indictments that were returned against you? |
| The Defendant: | I do. |
| The Court: | In the tax case -- |
| The Defendant: | I do. |
| The Court: | – because you passed that right in the felon in possession case. Because you did litigate pretrial motions in that one already. But, you're also giving up your right to challenge the Grand Jury proceedings that obtained the indictments. |
| The Defendant: | Yes, Your Honor.[25] |

The Court and Petitioner then reviewed the rights he was waiving, including his rights to proceed to trial, to participate in jury selection, to be presumed innocent and the Government's

---

[24]     Tr. 30:11–18; 33:12–34:1.

[25]     Tr. 34:9–21.

burden of proof at any trial, to confront witnesses, to testify or decline to testify without adverse inference, along with other related trial rights.[26]  During that colloquy, when asked if Petitioner understood that were he to proceed to trial and be found guilty, he would have the right to appeal that verdict to the Court of Appeals for the Third Circuit, Petitioner said he did.[27]  The Court then explored in detail whether Petitioner understood the scope of the appellate rights he was waiving under the plea agreement and the ramifications of the waiver:

| | |
|---|---|
| The Court: | Do you understand that the only grounds to appeal from a guilty plea would be if I imposed an illegal sentence, or there were error in the proceeding or sentencing proceeding? |
| The Defendant: | I do, Your Honor. |
| The Court: | And so, do you understand that by pleading guilty you give up your right to appeal from any conviction after trial? |
| The Defendant: | I do, Your Honor. |
| The Court: | Well, let's talk about what your appellate rights would be if you didn't have these waivers in your plea agreement. Normally you would have a right to appeal any sentence I would impose on you to the higher court, the Third Circuit Court of Appeals, which could then modify, set aside your sentence, or make me resentence you. Do you understand that? |
| The Defendant: | I do, Your Honor. |
| The Court: | The government has that same right of direct appeal.  Do you understand that? |
| The Defendant: | Yes. |
| The Court: | You would also have a right to bring a later proceeding, such as a collateral attack by filing a petition that we call a habeas |

---

[26]      Tr. 34:22–38:8.

[27]      Tr. 38:14–39:1.

10

| | |
|---|---|
| | corpus motion, and you would file that petition in this Court, to either vacate, set aside, or correct your sentence. Do you understand that? |
| The Defendant: | Yes, Your Honor. |
| The Court: | Your guilty plea agreement today greatly limits those rights to appeal, and prevents you, by your agreement, from using any later proceedings, such as a collateral attack and habeas corpus to challenge either your conviction, your sentence, or any other matter. Are you clear on that? |
| The Defendant: | Yes, Your Honor. |
| The Court: | According to your plea agreement, and [the Government's attorney] already reviewed this on the record, but I'll do it one more time, on page ten you can only appeal from your sentence if the government appeals from the sentence in a direct appeal. Then you may file a direct appeal of your sentence. Is that clear? |
| The Defendant: | I understand. |
| The Court: | But, if the government does not file a direct appeal of the sentence, then you can only file a direct appeal on the following three claims. |
| | One, if your sentence on any one count of conviction exceeds the statutory maximum for that amount. . . . Two, if I, as the sentencing Judge in your cases, make a mistake and depart upward from the applicable sentencing guideline ranges. Now, I will tell you the guidelines are advisory, they're not mandatory, so this would be a discretionary departure on my part. And if I do so erroneously you can appeal. Do you understand that? |
| The Defendant: | I understand, You Honor. |
| The Court: | And Third, if I[,] as the sentencing Judge, exercising my discretion again pursuant to United States versus Booker, which says that I sentence according to the sentencing statute, 18 United States Code, Section 3553[,] [i]f I impose an unreasonable sentence[,] that sentence being above the final sentencing guideline range, which we calculate and approve |

|  |  |
|---|---|
| | at the time of sentence. Do you understand that? |
| The Defendant: | I do, Your Honor. |
| The Court: | Do you have any questions about the waivers of your post conviction and appellate rights? |
| The Defendant: | I do not, Your Honor.[28] |

After reviewing the elements of the charged crimes to which Petitioner was pleading guilty that day, the Court once again pointedly asked Petitioner: "Do you understand that by pleading guilty and waiving all the rights we've been discussing, you cannot later come to this or any Court and claim that your rights were violated or that you're not guilty? Do you understand that?"[29] Petitioner unequivocally replied: "I understand that."[30]

Finally, before finding that Petitioner was competent and capable of entering an informed, knowing and competent plea,[31] the Court explored with Petitioner and counsel for both parties the voluntariness of Petitioner's plea:

|  |  |
|---|---|
| The Court: | Did anyone threaten you, coerce you, or force you in any way to plead guilty today? |
| The Defendant: | No, Your Honor. |
| The Court: | Has any other plea agreement been entered into this case, other than what we already talked about, stated on the record here? |
| The Defendant: | No, Your Honor. |

---

[28]     Tr. 39:2–42:10.

[29]     Tr. 55:19–23.

[30]     Tr. 55:24.

[31]     Tr. 60:4–10.

. . . .

| | |
|---|---|
| The Court: | Has your decision then to change your plea to guilty in both cases, the firearms case and the tax case, the 2005 case and the 2007 case, has your decision to change your pleas from not guilty to guilty been made of your own free will? |
| The Defendant: | Yes, Your Honor. |
| The Court: | Having heard from me what your rights are if you plead not guilty and proceed to trial on the remaining charges, and what may occur if you plead guilty and proceed to sentencing at a later date, do you still wish to give up your rights to a trial and plead guilty, Mr. Rankin? |

. . . .

| | |
|---|---|
| The Defendant: | Yes, Your Honor. |
| The Court: | Thank you. Do any counsel have any doubt as to Mr. Rankin's competence to enter this plea? |
| Mr. Schwartz: | None from the government, Your Honor. |
| Mr. Warren: | No doubt, Judge. |
| The Court: | And are each counsel satisfied that Mr. Rankin's willingness to plead guilty is voluntary and made with full understanding of the nature of the charges, the maximum penalties provided by law . . . and of his legal rights to contest those charges? |
| Mr. Schwartz: | That's correct, Your Honor. |
| Mr. Warren: | We're satisfied, Judge. |
| The Court: | And are each counsel satisfied that his plea is not based on any plea agreement, except those terms disclosed on this record? |
| Mr. Schwartz: | That's correct, Your Honor. |

Mr. Warren:          We're satisfied, Judge.[32]

At the end of the Change of Plea Hearing, Petitioner orally professed his plea of guilt to all pending Counts in open court.[33]

Prior to the sentencing hearing scheduled for May 19, 2008, the Probation Office's Presentence Investigation Report calculated Petitioner's total offense level under the advisory Sentencing Guidelines to be 24 after a 3-level downward adjustment for Petitioner's acceptance of responsibility for the charged offenses and timely notification of his intent to plead guilty, pursuant to U.S.S.G. §§ 3E1.1(a) and (b).   With a criminal history category of II, the advisory sentencing guideline range was 57–71 months.[34]   Exercising its ultimate discretion, the Court sentenced Petitioner to serve concurrent terms of imprisonment of 36 months on each Count of conviction, five years' supervised release, a special assessment of $1,025, restitution of $216,293, and a $10,000 fine for all Counts in both criminal matters.

On July 29, 2009, Petitioner filed the pending Section 2255 motions alleging: (1) his guilty plea was involuntary because it was induced by ineffective assistance of his tax counsel and the Government's misrepresentations and that his waiver of appeal and trial rights was due to misrepresentations by the government; (2) he was denied effective assistance of counsel because he was not advised of his counsel's "personal difficulties and dependence," counsel failed to move to dismiss the complaint and indictment for violations of the Speedy Trial Act, failed to attack false allegations in the probable-cause affidavit, and failed to pursue plausible alternative

---

[32]      Tr. 55:25–57:16.

[33]      Tr. 59.

[34]      PSR ¶ 106.

defense strategies; (3) prosecutors engaged in misconduct by destroying and suppressing evidence, including newly discovered and exculpatory evidence, and by threatening and influencing witnesses;[35] (4) "unwarranted conduct" took place that "had a chilling effect" on proposed witnesses, defense counsel, jurors and spectators; and (5) Petitioner was actually innocent of the prior offenses that increased his criminal history score and of the charges in the 2005 and 2007 indictments.[36] On October 23, 2009, the Government filed a motion to dismiss

---

[35] Petitioner's motion does not distinguish whether his claims of prosecutorial misconduct relate to his conviction or his guilty plea.

[36] Two months prior to filing his habeas corpus motion, Petitioner filed a Motion for Equitable Tolling of Time to File a Motion Under 28:2255" and a "Motion for Production of Transcripts." See Mot. for Equitable Tolling, May 5, 2009 [05-cr-615, Doc. No. 116; 07-cr-20-2, Doc. No. 151]; Mot for Produc. of Tr., May 14, 2009 [05-cr-615; Doc. No. 117; 07-cr-20-2, Doc. No. 152]. The Court dismissed both motions without prejudice for lack of jurisdiction and directed the Clerk of Court to, within seven days, provide Defendant with the proper Court forms to file his habeas motion. Order, July 16, 2009 [05-cr-615, Doc. No. 118; 07-cr-20-2, Doc. No. 154]. Petitioner contends that Order required *Petitioner* to file his habeas motion with seven days of the Order and thus he could not concisely state the issues on which he sought relief. See Pet'r's Mem. at 3-5 [Doc.05-cr-615, Doc. No. 119]. Petitioner misconstrued the Order, did not seek its clarification, and voluntarily filed his motion shortly thereafter.

When Petitioner filed his habeas corpus motion on July 29, 2011, he attached his previously submitted memoranda in support of the dismissed motions, and the Clerk of Court docketed the petition with those attachments. See 05-cr-615, Doc. No. 119; 07-cr-20-2, Doc. No. 153. In September 2009, Petitioner filed a subsequent motion to toll the Section 2255 process, wherein Petitioner contended he needed additional time to prepare his responsive briefing because his legal materials were confiscated by prison officials in December 2008. See Mot. to Stay, Suspend or Equitably Toll the 2255 Process Pending Rebuilding and Rehabilitation of Petitioner's Legal Property ("Mot. to Stay") [05-cr-615, Doc. No. 123; 07-cr-20-2, Doc. No.156]. In his Motion to Stay, Petitioner claimed he had filed for reconsideration of his motion for production of transcripts on July 23, 2009, but also recognized that a motion for reconsideration had not been acknowledged by the Clerk of Court. See Mot. to Stay ¶¶ 18–19. Despite that recognition, Petitioner never again moved for production of transcripts despite his awareness that no motion was pending before the Court, electing instead to "incorporate by reference" into the Motion to Stay the previously dismissed motion for production. See Mot. to Stay, ¶ 19. This Court cannot resolve motions that are not before it.

In July 2010, the Court dismissed the Motion to Stay because it concluded Petitioner had ample time to rebuild and rehabilitate his legal documents. See Order, July 30, 2010 [doc. no. 127]. The Court also granted Petitioner an additional 20 days to respond to the Government's

Petitioner's Section 2255 motion on grounds that Petitioner waived his rights to appeal or collaterally attack the sentence and/or pretrial rulings issued by the Court in the underlying criminal matters.

## II.   DISCUSSION

Criminal defendants can waive both constitutional and statutory rights, including the right to file a direct appeal or collaterally attack a sentence, so long as that waiver is knowing and voluntary.[37]  When reviewing a motion to dismiss a Section 2255 Petition on grounds that a defendant waived the right to collateral review, Courts should consider:  "(1) whether the waiver of the right to appeal [the] sentence was knowing and voluntary; (2) whether [any] specific exceptions set forth in the agreement prevents the enforcement of the waiver . . . ; and (3) whether enforcing the waiver would work a miscarriage of justice."[38]

Turning to the first inquiry, Petitioner claims, without any supporting facts, that his Guilty Plea and appeal waiver were involuntary because they were induced by the ineffectiveness of his counsel and by misrepresentations made by the government.  Petitioner's motion, however, provides no information as to how his tax counsel was ineffective or what misrepresentations were made by the government that induced the plea and appeal waiver.  And this Court's colloquy with Petitioner, who averred in open court that he had earned his juris doctor degree, belies his claims.  First, the Court assured itself, through careful colloquy with Petitioner, that he

---

Motion to Dismiss Petitioner's habeas corpus petition—effectively giving Petitioner a nine-month period to respond to the Government's Motion and move for production of transcripts. Petitioner failed to do either.

[37]     United States v. Mabry, 536 F.3d 231, 236 (3d Cir. 2008).

[38]     United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008) (citation and quotations omitted).

could hear and understand the proceedings despite his hearing impairment, and was competent to enter the plea and participate in the plea hearing that day. And, as the record demonstrates, the Court, on two occasions during the Change of Plea Hearing, asked Petitioner whether his plea had been induced by anything not contained in the Guilty Plea Agreement or by threats or force, and Petitioner assured the Court that it had not. The Court also asked Plaintiff whether he had read, signed and reviewed the Plea Agreement with his three attorneys, and whether he was satisfied with their performance, and Petitioner assured the Court that he was. The Court also meticulously reviewed with Petitioner the appeal waiver provisions of the plea agreement, and Petitioner confirmed that he understood the specific provisions of the waiver, its breadth and the limited exceptions. The Court's determination that Petitioner knowingly and voluntarily entered into the plea agreement in general, and the appellate waiver provisions in particular, was based on its assessment of Petitioner's responses to the Court's inquiries. Additionally, the voluntariness of the appeal waiver is also confirmed by the fact that the Petitioner reaped substantial benefits from the plea agreement, such as a significant reduction in the calculation of the final advisory guidelines range.[39] Petitioner has alleged no facts that cause the Court to alter its conclusion that Petitioner entered into the Plea Agreement, including the appeal waiver, knowingly and voluntarily. Petitioner's conclusory assertion that his plea agreement was induced by unidentified misrepresentations by the Government and unidentified ineffective assistance of counsel cannot overcome the clear record evidence that Petitioner's waiver was knowing and voluntary.

---

[39]    See United States v. Lake, 330 F. App'x 377, 379 (3d Cir. 2009) (noting that defendant's receipt of benefit of reduced sentence from the plea agreement supported voluntariness of waiver).

Because Petitioner entered into the plea agreement and appeal waiver knowingly and voluntarily, the Court next considers whether the issues raised by Petitioner's Section 2255 motion are among the exceptions to the waiver.[40]  Here, Petitioner does not challenge any sentencing issue excepted from the waiver in the Guilty Plea Agreement: The Government has not appealed the sentence, and Petitioner does not challenge his sentence on grounds that: (1) the sentence exceeds the statutory maximums; (2) the Court erroneously departed upward pursuant to the sentencing guidelines; or (3) the Court imposed an unreasonable sentence above the Sentencing Guidelines range.  Nor could Petitioner challenge his sentence on these grounds since he was sentenced to a term of imprisonment below the applicable Guidelines range.

Having determined that Petitioner's appeal waiver was entered knowingly and voluntarily and that no waiver exceptions apply, the Court must next determine whether to enforce Petitioner's appeal waiver.  The Court may entertain Petitioner's Section 2255 motion only if enforcing the waiver would work a miscarriage of justice.[41]  The "miscarriage of justice" exception is narrow and applies only in extraordinary circumstances.[42]  That term "connotes something grave and out of the ordinary,"[43] and courts should find such waivers unenforceable

---

[40]  See Goodson, 544 F.3d at 536.

[41]  See Mabry, 536 F.3d at 236–37; Khattak, 273 F.3d at 560, 562, 563.

Although Mabry and Khattak applied this standard to direct appeals, it is equally applicable to Section 2255 motions.  See, e.g., United States v. White, 390 F. App'x 114, 116 (3d Cir. 2010) (applying the miscarriage of justice standard to a habeas motion and citing United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001)).

[42]  See Mabry, 536 F.3d at 236–37; United States v. Jackson, 523 F.3d 234, 244 (3d Cir. 2008); Goodson, 544 F.3d at 533–34; United States v. Gwinnett, 483 F.3d 200, 206 (3d Cir. 2007); Khattak, 273 F.3d at 562.

[43]  Mabry, 536 F.3d at 239.

only "sparingly and without undue generosity."[44]  Thus, a knowing and voluntary appeal waiver precludes appeal or collateral attack based both "debatable legal issues" as well as blatant legal error.[45]

The Third Circuit has not delineated specific situations that give rise to a miscarriage of justice, directing instead that courts take a fact-specific approach and consider a range of factors to determine whether a waiver is unenforceable:

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.[46]

At all times, however, the guiding principle is whether enforcement works a miscarriage of justice.[47]  To date, this Circuit has rarely found circumstances in which enforcement would result in a miscarriage of justice, such as where the defendant should have been permitted to withdraw the guilty plea,[48] and where the government breached its obligations under the plea agreement.[49]

The Third Circuit has, however, identified certain ineffective assistance of counsel claims where enforcing an appeal waiver would work a miscarriage of justice: where a petitioner claims

---

[44]    United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting United States v. Teeter, 257 F.3d 14, 26 (1st Cir. 2001)).

[45]    Khattak, 273 F.3d at 562 ((quoting United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999)).

[46]    Khattak, 273 F.3d at 563 (alteration in original) (quoting Teeter, 257 F.3d at 25–26).

[47]    Id.

[48]    Wilson, 29 F.3d at 458.

[49]    United States v. Schwartz, 511 F.3d 403, 405 (3d Cir. 2008).

that ineffective assistance of counsel tainted the plea proceedings such that the waiver itself was the product of ineffectiveness;[50] where ineffectiveness prevented a defendant from understanding his plea agreement;[51] and where counsel failed to timely file an appeal raising an issue explicitly exempted from the waiver in the plea agreement.[52]  Though the Third Circuit has not addressed whether allegations of counsel's ineffectiveness will, in all circumstances, invalidate a waiver,[53] district courts in this Circuit and other circuit courts have declined to find that claims of ineffective assistance of counsel *unrelated* to the plea process render a waiver unenforceable.[54]

Here, Petitioner alleges that his counsel was ineffective for failing to: (1) move to dismiss the initial complaint and indictment on grounds that the Speedy Trial Act was violated; (2) challenge the false allegations contained in the probable cause affidavit; (3) to pursue alternative defense strategies; and (4) advise him of counsels' "personal difficulties and dependence."  But Petitioner does not allege that any of these purported failings were in any way related to the plea agreement and waivers of appeal; thus his claims fall outside of the category of ineffective assistance claims for which a waiver may be deemed unenforceable.  Further, this Court clearly explained to Petitioner that he was giving up all rights to challenge his indictment; and Petitioner asserted that he understood he was waiving those rights.  Petitioner's bald assertions of

---

[50]    United States v. Akbar, 181 F. App'x 283, 286 (3d Cir. 2006) (citing Teeter, 257 F.3d at 25 n.9).

[51]    United States v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007).

[52]    Id.

[53]    United States v. Padilla-Castro, No. 09-4216, 2011 WL 1667167, at *2 (3d Cir. May 4, 2011).

[54]    See United States v. Robinson, Nos. 04-cv-884, 02-cr-760, 2004 WL 1169112, at *3 (E.D. Pa. Apr. 30, 2004) (collecting circuit court cases).

ineffectiveness are unsupported by any factual averments as to how the Speedy Trial Act was violated and for which indicted offenses, what false allegations were made, what alternative defense strategies were available and why failure to pursue them rendered counsels' performance ineffective, and what personal difficulties and dependencies his attorneys had.[55] Finally, each of the alleged instances of ineffectiveness occurred prior to Petitioner's Guilty Plea Agreement and his colloquy with this Court, wherein he averred he was satisfied with his attorneys' performance. Accordingly, the Court finds no miscarriage of justice in enforcing the waiver and foreclosing Petitioner's habeas claims on these grounds.

Petitioner also asserts, however, that his guilty plea was induced by ineffective assistance of counsel, arguably raising a claim that falls within the category of appeals for which a waiver may be found unenforceable. But even where a petitioner claims that ineffectiveness tainted a plea agreement, a waiver does not become unenforceable unless the record demonstrates "'that the claim that the waiver was the result of ineffective assistance of counsel was meritorious.'"[56] Under Strickland v. Washington, Petitioner bears the burden of demonstrating that the performance of his attorney or attorneys was deficient and that Petitioner was prejudiced by that deficiency.[57] Thus, Petitioner must show that his attorneys' performance fell "below an objective standard of reasonableness, and that there is a reasonable probability that, but for the

---

[55] Petitioner's motion does not even indicate which of his three attorneys was so afflicted.

[56] Akbar, 181 F. App'x at 286–87 (quoting United States v. Monzon, 359 F.3d 110, 118–19 (2d Cir. 2004)).

[57] Shedrick, 493 F.3d at 299 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

counsel's unprofessional errors, the result of the proceeding would have been different."[58]  But there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound . . . strategy."[59]  Applying this standard here, Petitioner cannot meet his burden to demonstrate any meritorious claim that the waiver was induced by ineffective assistance of counsel because Petitioner has alleged no facts whatsoever as to how counsel was ineffective or how any ineffectiveness induced his plea agreement.  Appeal waivers would be meaningless if they were rendered unenforceable by purely conclusory allegations of ineffective assistance during negotiation of a plea agreement.

Petitioner also alleges (1) prosecutorial misconduct, claiming that the prosecutor suppressed and destroyed evidence, failed to produce exculpatory evidence, and threatened witnesses; (2) that he is not guilty of prior convictions that factored into his criminal history score and is innocent of the underlying offenses in this case; and (3) that the petit jury was unconstitutionally selected.  Petitioner's claims fall within the broad scope of his knowing and voluntary appeal waiver.[60]  As with Petitioner's ineffectiveness claims, Petitioner fails to make sufficient factual allegations supporting any of these claims.[61]  Without more, none of them fall

---

[58]  Id. (internal citations and quotations omitted).

[59]  Strickland, 466 U.S. at 689 (citations and quotations omitted).

[60]  See, e.g., U.S. v. Reynolds, 380 F. App'x 125, 126 (3d Cir. 2010) (claim of actual innocence within scope of appeal waiver and enforcement did not amount to miscarriage of justice); United States v. White, 386 F. App'x. 787, 791 (10th Cir. 2010) (claim of actual innocence and withholding of exculpatory evidence within broad scope of waiver); United States v. Khoi Van Ha, 355 F. App'x 976, 977 (8th Cir. 2009) (same).

[61]  Petitioner's only factual assertion, in his memorandum in support of his previously dismissed motion for equitable tolling attached to Petitioner's habeas corpus motion,

within the narrow scope of the miscarriage-of-justice exception to enforcement of appeal waivers: Petitioner has alleged no error at all, let alone grave errors or exceptional circumstances. Further, Petitioner stated in his colloquy with this Court that he understood that by pleading guilty, he could not appeal on grounds that he was actually innocent of the charges or that his constitutional rights were violated and could not challenge the jury verdict in the firearms case.

Accordingly, as demonstrated by the record in this matter, Petitioner knowingly and voluntarily waived his right to appeal and collaterally attack his sentence, and has set forth no facts from which this Court can find that enforcing the waiver would work a miscarriage of justice. The Court therefore finds that Petitioner's claims for collateral relief are foreclosed.[62] And because Petitioner has not made a substantial showing of the deprivation of a constitutional right,"[63] the Court also declines to issue a certificate of appealability.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's Section 2255 Motion and grant the Government's Motion to Dismiss.

An appropriate Order follows.

---

in support of any of these claims is that he has newly discovered evidence, purportedly withheld by the government, that the .38 caliber Colt revolver found in Petitioner's office safe was owned by his business partner Mr. Krabsz, because new evidence shows Krabsz had purchased two .38 caliber firearms and that bullets for the .38 found in Petitioner's office were found in Krabsz's home. See Pet'r's Mot. for Equitable Tolling at 5–6 [Doc. Nos. 116 & 119]. Petitioner does not dispute that the gun was found in his office.

[62]    Because the record conclusively demonstrates that Petitioner is not entitled to relief, the Court need not hold an evidentiary hearing to determine the merits. 21 U.S.C. §2255(b); United States v. Dawson, 857 F.2d 923, 927 (3d Cir. 1988).

[63]    28 U.S.C. § 2253(c)(2).